**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CRAIG OLIVER,

Plaintiff,

v.

COII TURAY and
SGT. FOLUSO FEKOYA,

Defendants.

Civil Action No.: ABA-25-1564

**MEMORANDUM OPINION**

Plaintiff Craig Oliver, who is currently incarcerated at North Branch Correctional Institution ("NBCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Correctional Officer Momoh Turay and Sgt. Foluso Fekoya. ECF No. 1. Oliver alleges that he was subjected to excessive force and denied adequate medical care. He seeks monetary damages.

Defendants filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, along with a Motion to Seal. ECF Nos. 17 and 19. Oliver was notified of his right to respond to the Motion (ECF 20) but, to date, has not filed anything in response. For the following reasons, Defendants' Motion, construed as one for summary judgment, will be granted.

## I. BACKGROUND

Oliver alleges that on November 19, 2024, an officer at Jessup Correctional Institution ("JCI") refused to give him his prescribed special diet breakfast tray. ECF No. 1 at 1. Oliver refused to close the feed-in slot and requested a supervisor after the officer threatened him. *Id.* CO Turay and Sgt. Fekoya arrived at Oliver's cell soon after. *Id.* Fekoya insisted that a diet tray had been delivered but, according to Oliver, that tray was for his cellmate who receives a diabetes tray whereas Oliver needs a gluten-free tray. *Id.* During this conversation, Turay threatened

Oliver. As the supervisor, Fekoya refused to either fix the tray issue or reprimand Turay. *Id.* at 2. Oliver reached out to close the food slot, and Turay began to spray him and his sleeping cellmate with pepper spray. Turay then let them "simmer" instead of rendering the necessary first aid. *Id.* at 2. Oliver contends that there was no basis for Turay to deploy the pepper spray because he was fully contained in his cell and there was no order to restore. *Id.* He claims that Defendants and other officers intentionally wasted time afterwards instead of getting Oliver and his cellmate medical attention. *Id.* at 3. Oliver asked Fekoya to remove the officers from around his cell before and after the spray was deployed and he did nothing. *Id.* Oliver filed a grievance about the incident, which was dismissed due to a pending investigation by the Intelligence & Investigations Division ("IID"). *Id.* He seeks $500,000 in damages. *Id.* at 4.

CO Turay states in a Use of Force Report that on November 22, 2024, he was assigned to the JCI B-Building assisting with securing slots after breakfast on the C-Wing. ECF No. 18 at 22. Approaching Oliver's cell, Turay observed Oliver holding his arm out of the slot; Oliver informed him that he had not received his breakfast. *Id.* Turay reports that he and Fekoya tried to discuss this with Oliver but he became aggressive and threw a food tray at the officers. *Id.* at 22, 42. Fekoya elaborates that Oliver gave Fekoya dietary paperwork and a tray; while he reviewed the paperwork, Officer Obioha reported that he had served Oliver. *Id.* at 18. When Oliver became agitated, he hit the food tray out of Fekoya's hand, spilling the contents on Turay and Fekoya. *Id.* Oliver also threw a bottle of liquid at Turay. *Id.* Oliver ignored Turay's subsequent order to stop throwing things, so Turay dispersed "one quick blast" of pepper spray in Oliver's direction. *Id.* at 22. Oliver stepped back, but then complied with orders to present his hands to be cuffed. *Id.* Both Oliver and his cell mate were escorted to medical for evaluation. *Id.* Oliver was given a meal tray

while he was in medical. *Id.* at 18. Oliver took a shower and did not suffer any serious bodily injury. *Id.* at 22, 30-31.

The surveillance footage confirms Defendants' version of events for the most part.[1] The reports do not state, however, that following disbursal of the pepper spray, Defendants closed Oliver's feed-in slot and left for approximately twelve minutes before returning to remove Oliver and his cellmate. ECF No. 18-1 at 6:51:24 – 7:03:38. The officers cannot be seen on the footage during this time except at one point where they appear to move an industrial fan across the tier. *See id.* at 6:59:15.

According to the IID Report, Oliver was issued a Notice of Inmate Rule Violation before returning to his segregation cell. ECF No. 18-2 at 5, 8. Oliver pled guilty to committing assault or battery on staff and disobeying an order. *Id.* at 8, 28. The institution did not pursue the charge for engaging in a disruptive act. *Id.* at 8, 29. Oliver was sanctioned with revocation of 100 diminution credits, 40 days' segregation, and loss of visitation for 30 days. *Id.* at 30.

## II. MOTION TO SEAL

Defendants seek to seal Exhibits A, C, and D attached to their memorandum in support of their dispositive motion. ECF No. 19. They state that these exhibits contain information that may compromise institutional security. *Id.* at 1-2. Local Rule 105.11 governs the sealing of all documents filed in the record and states in relevant part that: "[a]ny motion seeking the sealing of pleadings, motions, exhibits or other documents to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection." Local Rule

[1] John White, a case manager at NBCI, where Oliver is currently incarcerated, attests that Oliver viewed this video exhibit on December 15, 2025. ECF 17-3.

105.11 (D. Md. 2025). The rule balances the public's general right to inspect and copy judicial records and documents, *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), with competing interests that sometimes outweigh the public's right, *see In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). The common-law presumptive right of access can only be rebutted by showing that "countervailing interests heavily outweigh the public interest in access." *Doe v. Pub. Citizen*, 749 F.3d 246, 265–66 (4th Cir. 2014) (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). The right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'" *Id.* at 266 (quoting *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)). "[S]ensitive medical or personal identification information may be sealed," although not where "the scope of [the] request is too broad." *Rock v. McHugh*, 819 F. Supp. 2d 456, 475 (D. Md. 2011).

Because Exhibit C contains surveillance video of JCI, the Court acknowledges the possible security risks of its availability to the public and will grant Defendants' request to seal. However, upon review of the institutional records and investigative report in Exhibits A and D, the same security risks are not apparent. Still, because they contain Oliver's medical records and other sensitive information, the less stringent approach of restricting access to only the case participants satisfies the need to protect the personal information contained in the records and also allow access for efficient litigation. Accordingly, the Motion to Seal will be granted. Exhibit C shall be sealed and access to Exhibits A and D shall be restricted to the parties.

## III. STANDARD OF REVIEW

Defendants move to dismiss the claims under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56. Such motions

implicate the Court's discretion under Rule 12(d). *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Rule 12(d) provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The Court maintains "'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" *Wells-Bey v. Kopp*, Case No. 12-cv-2319-ELH, 2013 WL 1700927, at *5 (D. Md. Apr. 16, 2013) (quoting 5C *Wright & Miller's Federal Practice & Procedure* § 1366 (3d ed. 2004, 2012 Supp.)).

Oliver was on notice that Defendants sought summary judgment in their favor, and he was given an opportunity to respond. ECF No. 20. Accordingly, the Court will assess the sufficiency of Oliver's claims under the summary judgment standard where appropriate. *See, e.g.*, *Moret v. Harvey*, 381 F. Supp. 2d 458, 464 (D. Md. 2005). Pursuant to Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in [their] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [their] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 249–50.

## IV. DISCUSSION

Defendants seek dismissal of the Complaint or summary judgment in their favor because Defendants are entitled to Eleventh Amendment immunity in their official capacities, Oliver fails to state an Eighth Amendment excessive force or denial of medical care claim, Oliver fails to state a supervisory liability claim against Fekoya, the Prison Litigation Reform Act bars any claim for mental or emotional damages, and Defendants are entitled to qualified immunity. ECF No. 17-1.

### A. Eleventh Amendment Immunity

Although Oliver does not specify in what capacity he sues Defendants, to the extent he sues them in their official capacities, his suit cannot proceed. The Eleventh Amendment to the Constitution immunizes state agencies and departments from citizen suits for damages in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Defendants are both Maryland state employees. Suits against agents of the state for acts taken in their official capacities are equivalent to suing the state itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, to the extent Oliver's pleadings could be construed to raise claims

against Defendants in their official capacities, those claims are barred by the Eleventh Amendment, *see Pennhurst*, 465 U.S. at 100–01, and will be dismissed with prejudice. Claims against Defendants in their individual capacities are not barred by Eleventh Amendment immunity.

**B. Excessive Force**

"The Eighth Amendment 'protects inmates from inhumane treatment and conditions while imprisoned.'" *Boone v. Stallings*, 583 F. App'x 174, 176 (4th Cir. 2014) (per curiam) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). In cases involving excessive force, the Court must determine: (1) "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," which is the subjective component, *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992)); and (2) "whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious," which is the objective component, *Boone*, 583 F. App'x at 176 (quoting *Williams*, 77 F.3d at 761).

Regarding the "subjective" prong, to determine whether CO Turay acted maliciously or sadistically to cause Oliver harm, this Court must consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat; and (4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The absence of significant injury alone is not dispositive of a claim of excessive force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). The extent of injury incurred is indicative of whether the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id.* at 38–39.

Viewing the evidence in the light most favorable to Oliver, the record does not establish that Turay used excessive force against him. "The use of pepper spray is not per se a cruel and unusual punishment" and "is reasonable when an officer is attempting to maintain order and discipline in [an] institution." *Kitchen v. Ickes*, 116 F. Supp. 3d 613, 626–27 (D. Md. 2015), *aff'd*, 644 F. App'x 243 (4th Cir. 2016) (citations and quotations omitted). Turay reasonably perceived a threat from Oliver because, despite being secured in his cell, he was actively throwing things from his cell directly at Turay. Further, it is reasonable to believe that Oliver would have continued to do so if there was no intervention. The record and video show that after Turay is directly hit by a bottle, he disburses a 2-3 second burst of the pepper spray. Turay only did so after Oliver had refused several orders to stop. This amount of force was not disproportionate, malicious, or sadistic. *See id.* ("[W]here an inmate repeatedly ignores official commands, multiple applications of pepper spray have been found reasonable."). No further force was used, and Oliver ultimately did not suffer any serious injury. Considering all of these factors, Turay's use of force did not violate the Eighth Amendment. As such, Turay is entitled to summary judgment in his favor.

**C. Medical Care**

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff suffered from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v.*

*Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko*, 535 F.3d at 241. Objectively, the medical condition at issue must be serious. *See Hudson*, 503 U.S. at 9 (there is no expectation that prisoners will be provided with "unqualified access to health care"); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839, 840; *see also Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

The Court need not assess the subjective component because there is no evidence that Oliver presented with an objectively serious medical need. Oliver asserts that he suffered temporary irritation from the pepper spray, and the medical records submitted into evidence do not show that he suffered any other serious injury. This is entirely unlike, for example, *Iko*, where after the plaintiff was pepper sprayed he collapsed in the presence of prison staff and later died from asphyxia. *See Iko*, 535 F.3d at 241. Oliver's claim must fail as a matter of law. However, the Court acknowledges that the unexplained twelve minutes between the disbursal of the pepper

spray and the officers' return to remove Oliver and his cellmate is troubling. No reason is given for why the fan needed to be set up on the tier before extricating Oliver and his cellmate from the contaminated cell. Still, because the record cannot support a finding that Oliver had a serious medical need, Defendants are entitled to summary judgment in their favor.

Because there are no underlying constitutional violations, to the extent Oliver sought to bring a supervisory liability claim against Fekoya, it must fail. *See Hinkle v. City of Clarksburg, W.Va.*, 81 F.3d 416, 420–21 (4th Cir. 1996).

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment and the accompanying Motion to Seal will be granted. Any official capacity claims against Defendants are dismissed; judgment is otherwise granted in Defendants' favor.

A separate Order follows.

August 21, 2026
Date

*/s/*
Adam B. Abelson
United States District Judge